UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAULA MARIE GAGNON,

                      Plaintiff,

                     V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                    Defendant.

_____

**REPORT AND
RECOMMENDATION**

12-CV-577
(MAD/VEB)

## I. INTRODUCTION

In April of 2008, Plaintiff Paula Marie Gagnon applied for Supplemental Security

Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security

Act. Plaintiff alleges that she has been unable to work since November of 2004 due to

physical and emotional impairments. The Commissioner of Social Security denied Plaintiff's

applications.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP,

Lawrence D. Hasseler, Esq., of counsel, commenced this action seeking judicial review of

the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner.
The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this
matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for SSI benefits and DIB on April 16, 2008, alleging disability beginning on November 1, 2004. (T at 106-110).[2] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 18, 2010, in Syracuse, New York before ALJ Barry E. Ryan. (T at 32). Plaintiff, represented by counsel, appeared and testified. (T at 36-54). On July 12, 2010, ALJ Ryan issued a written decision denying Plaintiff's applications. (T at 10-31). The ALJ's decision became the Commissioner's final decision on February 17, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on April 4, 2012. (Docket No. 1). The Commissioner interposed an Answer on July 17, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on August 28, 2012. (Docket No. 10). The Commissioner filed a Brief in opposition on September 24, 2012. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and that this case be dismissed.

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (November 1, 2004) and met the insured status requirements of the Social Security Act through December 31, 2006.  (T at 16).  The ALJ found that Plaintiff had the following severe impairment: idiopathic intermittent thrombocytopenic purprua ("ITP").[5] (T at 16-22).   However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 22).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 10 pounds frequently; lift and/or carry 10 pounds occasionally; stand more than 2 hours total in an 8-hour workday; walk more than 2 hours in an 8-hour workday; and

---

[5]ITP is a disorder related to the production of platelets.  It causes easy or excessive bruising and bleeding. See  http://www.mayoclinic.com/health/idiopathic-thrombocytopenic-purpura/DS00844 (last accessed May 30, 2013).

sit 6 hours in an 8-hour workday. (T at 22-24). The ALJ determined that Plaintiff was unable to perform her past relevant work as a nurse's aide, furniture store manager, hotel manager, or secretary in a hardware store. (T at 24).

Considering Plaintiff's age (28 years old on the alleged onset date), education (high school), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24-25).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (November 1, 2004) to the date of his decision (July 12, 2010). (T at 25-26).

As noted above, the ALJ's decision became the Commissioner's final decision on February 17, 2012, when the Appeals Council denied Plaintiff's request for review.  (T at 1-6).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position.  First, Plaintiff argues that the ALJ erred by failing to find that her low back/hip pain, and depression/anxiety were severe impairments.  Second, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence.  Third, Plaintiff challenges the ALJ's step five analysis. This Court will address each argument in turn.

### a.      Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

The ALJ concluded that Plaintiff had a single severe impairment: ITP. (T at 16). Plaintiff argues that her back/hip pain and depression/anxiety were also severe impairments.

### i.    Hip/Back Pain

An August 2005 CT scan of Plaintiff's lumbosacral spine indicated minimal central disc protrusion at L4-5. (T at 307).  An October 2006, MRI of Plaintiff's lumbosacral spine gave an impression of a small central disc protrusion with small diffuse broad based disc bulge at L4-5, without spinal stenosis, along with small diffuse bulging disc L5-S1, with no evidence of spinal stenosis. (T at 485).  An x-ray conducted in October of 2006 indicated mild degenerative changes at L5-S1 in the thoracolumbar junction. (T at 487). A May 2008 MRI of Plaintiff's lumbosacral spine revealed mild posterior disc bulging at L4-5 and L5-S1 without interval change. (T at 481).

Katherine Baker, a treating physician's assistant, reported in April of 2008 that Plaintiff was having "severe pain in her hips," which made walking difficult. (T at 581).  Ms. Baker indicated that Plaintiff's hip pain might be related to her ITP, as the pain worsened when Plaintiff had flares of that condition. (T at 581-82).

Dr. Juan Diego Harris, a pain management specialist, assessed "significant low back pain" related to the following: lumbar facet arthropathy bilateral (worse on the right), right sacroilitis, and piriformis muscle syndrome (likely secondary in nature). (T at 810).  Dr. Harris performed lumbar facet intra-articular blocks on the right side. (T at 811-12). Plaintiff's pain was also treated with steroid injections and prescription pain medication. (T at 220, 790, 831).

The ALJ concluded that Plaintiff's hip/back pain was not a severe impairment, noting her inconsistent treatment history and the lack of any evidence of nerve root impingement. (T at 18-19).  The treatment notes of Dr. Harris, the pain management specialist, provide support for the ALJ's finding.  In August of 2008, Dr. Harris reported that Plaintiff was

8

"doing very well" following lumbar facet intraarticular injections. (T at 813). He encouraged Plaintiff "to remain physically active and . . . pursue abdominal and thigh muscle strengthening exercises." (T at 813).

However, Dr. Justine Magurno, a consultative orthopedic examiner, assessed "marked" limitations for lifting and carrying and "moderate" limitations with regard to bending, standing, walking, stair climbing, pushing, and pushing. (T at 688). The ALJ accepted Dr. Magurno's limitations assessment as consistent with the medical evidence and incorporated it into his RFC determination (T at 20, 22). It is not clear how the ALJ reconciled his decision to accept these exertional limitations with his conclusion that Plaintiff's hip/back pain was not a severe impairment.

This Court is inclined to conclude that the ALJ erred with regard to his severity finding. However, the ALJ found that Plaintiff had another impairment considered severe under the Act (namely, ITP), incorporated limitations related to Plaintiff's hip/back pain in his RFC, and completed the sequential analysis. As such, any errors in his findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL

1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### ii. Depression/Anxiety

When evaluating the severity of mental impairments, the Regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In the present case, a May 2007 treatment note from an emergency room visit documents Plaintiff's complaints of severe mood swings, depression, and social anxiety.

(T at 592). She was prescribed Lexapro to treat her anxiety and depression. (T at 593). An April 2008 treatment note described Plaintiff's depression/anxiety as "uncontrolled" and reported that her Lexapro dosage had been increased. (T at 581). In September of 2008, Plaintiff complained of being "very anxious" and she was described as "tearful." (T at 842).

The ALJ concluded that Plaintiff's depression/anxiety did not cause more than minimal limitation with regard to her ability to perform basic mental work activities. (T at 21). In particular, the ALJ found no restriction with regard to Plaintiff's activities of daily living, mild restrictions as to social functioning, mild limitation with respect to social functioning, and no extended duration episodes of decompensation.

Substantial evidence supports these findings. Although the record documents some complaints of psychiatric symptoms and contains the depression/anxiety diagnosis (along with some prescription medication treatment), the record contains sufficient evidence to sustain the ALJ's conclusion that Plaintiff did not have more than a mild limitation in any of the functional areas.

Psychiatric evaluations performed in March and April of 2009 by Dr. Jamie Hynd were "[n]egative for anxiety, depression, and sleep disturbances." (T at 728, 731). Dr. Richard Williams performed a consultative psychological evaluation in August of 2008. During that evaluation, Plaintiff reported that her mood swings were improved by Lexapro and her sleep problems were improved through the use of Ambien. (T at 660). Dr. Williams diagnosed adjustment disorder with mixed anxiety and depressed mood. (T at 660). He gave Plaintiff a Global Assessment Functioning ("GAF") score of 65. (T at 660). The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004). "[A] GAF score

of 65 . . . reflects '[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, [with] some meaningful interpersonal relationships.'" <u>Kohler v. Astrue</u>, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 34 (4th ed.2000)).

H. Ferrin, a non-examining State Agency review consultant, reviewed the medical record and opined that Plaintiff could understand and remember instructions and sustain attention and concentration for tasks. (T at 682). The consultant indicated that a "low contact" setting might be "beneficial." (T at 682).

An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. <u>See</u> 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); <u>see</u> <u>also</u> <u>Leach</u> <u>ex. Rel. Murray v. Barnhart</u>, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Here, a treating provider evaluated Plaintiff twice and found no indication of anxiety/depression, a consultative examiner assessed generally mild symptoms, and a State Agency review consultant concurred in this assessment. In light of the foregoing, this Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's depression/anxiety was a non-severe impairment.

**b.    RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to lift and/or carry 10 pounds frequently; lift and/or carry 10 pounds occasionally; stand more than 2 hours total in an 8-hour workday; walk more than 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. (T at 22-24).

Plaintiff challenges this determination, pointing principally to a form completed on May 28, 2008, by Katherine Baker (a treating physician's assistant) and co-signed by Dr. Kelly Scott, a treating physician (the "Baker/Scott opinion")(T at 564-70). The Baker/Scott opinion noted the following symptoms: severe lower back and hip pain; generalized muscle pain; frequent exacerbations of ITP, which require hospitalization; sleep difficulties; depression, agoraphobia, and anxiety. (T at 564). Baker and Scott opined that Plaintiff was limited to occasionally lifting/carrying less than 10 pounds; standing/walking less than 2

13

hours per day; and sitting less than 6 hours per day (with frequent changes in position). (T at 567). They also concluded that Plaintiff could not perform any pushing, pulling, or use hand/feet controls. (T at 567).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

The ALJ discounted the Baker/Scott opinion, finding that it was not supported by or consistent with the medical record. (T at 20). The ALJ's decision was supported by substantial evidence and in accord with applicable law.

_____

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

First, other than generic references to "treatment notes," the Baker/Scott opinion was not supported by clinical findings or objective medical evidence. The probative value of a "checklist" form that lacks specific reference to supporting signs and findings is limited. See 20 C.F.R. §§ 404.1527(d)(3) and 416. 927(d)(3). ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); see also Halloran v. Barnhart, 362 F.3d 28, 31 n. 2 (2d Cir. 2004)(describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); Llorens-Feliciano v. Astrue, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012)("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")(quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Second, the ALJ reasonably concluded that the limitations assessed by Baker/Scott were inconsistent with the medical record. MRIs and X-rays generally indicated mild degenerative changes in Plaintiff's back and hips (T at 563, 577, 579, 612). Plaintiff performed part-time work during the period of disability (T at 591, 783), along with occasional grocery shopping and preparation of meals. (T at 137, 686). Dr. Harris, the pain management specialist, reported that Plaintiff was "doing very well" following lumbar facet intraarticular injections and encouraged her "to remain physically active and . . . pursue abdominal and thigh muscle strengthening exercises." (T at 813).

Dr. Lucille Alston, the treating physician with regard to Plaintiff's ITP, noted in June of 2004 that Plaintiff had a "good platelet count" with no evidence of bleeding or anemia.

(T at 778). She "strongly advised" Plaintiff to complete her education and encouraged her to realize her goal of becoming an ophthalmology technician. (T at 778). In February of 2005, Dr. Alston reiterated her recommendation that Plaintiff pursue her career as an ophthalmology technician and advised Plaintiff that her symptoms could be successfully managed with conservative steroid treatment. (T at 786). In June of 2008, Dr. Alston reported that Plaintiff experienced "significant improvement especially during the spring and summer months." (T at 801). In February of 2009, Plaintiff was described as "doing well" with no recent episodes of bleeding. (T at 802). In August of 2009, Dr. Alston described Plaintiff as "asymptomatic" and recommended that she follow-up in six months unless she experienced an acute problem in the meantime. (T at 806-07).

Third, the ALJ's decision to discount the Baker/Scott opinion was supported by the report of the consultative examiner. Dr. Magurno assessed marked limitations for lifting and carrying, but only moderate limitations with regard to bending, standing, walking, stair climbing, pushing, and pushing. (T at 688). She found only mild limitations for sitting and no limitations for squatting, reaching, or fine motor activity. (T at 688). On exam, Dr. Magurno noted that Plaintiff's station and gait were normal, with full flexion of the cervical spine, full range of motion in the upper and lower extremities, and no evidence of muscle atrophy. (T at 686-87).

"Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

This Court finds no reversible error with regard to the ALJ's RFC determination, including his decision to discount the Baker/Scott opinion. This decision was supported by the clinical evidence, diagnostic testing, recommendations by treating providers, and the consultative examiner's assessment.

### c.    The Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. (T at 16). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

The ALJ concluded that Plaintiff retained the RFC to perform the full range of work. (T at 25). Considering Plaintiff's age, education, and work experience, the ALJ determined

that a finding of "not disabled" was directed by Medical-Vocational Rule 201.28. (T at 25). For the reasons outlined above, this finding was supported by substantial evidence (including clinical evidence, diagnostic testing, recommendations by treating providers, consultative examiners' assessment, and the assessment of the State Agency psychiatric review consultant).

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Dated: June 3, 2013

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 3, 2013

Victor E. Bianchini
United States Magistrate Judge